# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

WILLIAM SLEEPER,

    Plaintiff,

  v.

URS MIDWEST, INC.,

    Defendant.

Case No. 3:17-cv-00071-SLG

## ORDER RE MOTION FOR SUMMARY JUDGMENT AND SCHEDULING ORDER

Before the Court at Docket 35 is Defendant URS Midwest, Inc.'s ("URS") Motion for Summary Judgment. Plaintiff William Sleeper opposed at Docket 40. URS replied at Docket 44. Oral argument was held on April 30, 2018, at Anchorage, Alaska, before Judge Sharon L. Gleason.[1]

## BACKGROUND

URS provides vehicle transportation services for customers in the United States and Canada.[2] Its Alaska drivers continue the transportation of vehicles that have been shipped to Alaska, delivering them to customers in Fairbanks, Prudhoe Bay, and other locations within the state.[3]

William Sleeper worked as a truck driver for URS from February 21, 2012, until October 26, 2016.[4] During his employment for URS, Mr. Sleeper's primary route was

---

[1] Docket 53 (Minute Entry).

[2] Docket 37 (Emmons Decl.) at 2, ¶ 4.

[3] Docket 37 at 3, ¶ 7.

[4] Docket 41 (Sleeper Affidavit) at 1, ¶ 2. Mr. Sleeper had also worked at URS at some point

between Anchorage and Prudhoe Bay.[5] As compensation, URS paid Mr. Sleeper on a commission basis of 23 or 24% of the net revenue generated per line trip.[6] Mr. Sleeper could also receive an amount of up to 3% of net revenue through the Quality Fund Bonus Program.[7] Payment of these funds depended on Mr. Sleeper's successfully completing each trip without the vehicles he was transporting sustaining any damage.[8] Mr. Sleeper was also paid $15 per hour for light maintenance and a flat fee of $100 for washing the truck and trailer assigned to him.[9] Mr. Sleeper states that his job duties included a number of tasks in addition to driving and that he was not paid overtime despite regularly working over 8 hours per day and over 40 hours per week.[10]

On February 8, 2017, Mr. Sleeper filed a Complaint in the Superior Court for the State of Alaska, Third Judicial District at Anchorage.[11] On March 31, 2017, URS removed the case to this Court pursuant to 28 U.S.C. § 1441.[12] Mr. Sleeper asserts in the Complaint that "[d]uring the course of his employment, URS Midwest, Inc. required Mr. Sleeper to perform job duties other than truck driving, and for these additional duties,

---

prior to February 2012. Docket 41 at 1, ¶ 2.

[5] Docket 38-1 (Sleeper Deposition) at 3.

[6] Docket 41 at 2, ¶ 5. Mr. Sleeper received a 23% commission from February 1, 2012 to December 21, 2013. He received a 24% commission from December 22, 2013 to October 26, 2016. Docket 37 at 6, ¶ 28.

[7] Docket 41 at 2, ¶ 6.

[8] Docket 38-1 at 30.

[9] Docket 41 at 3, ¶ 7.

[10] Docket 41 at 2–3, ¶¶ 3, 10.

[11] Docket 1-1 (Compl.).

[12] Docket 1 (Notice of Removal).

URS Midwest, Inc. did not pay any overtime payments for these duties, even if these required hours of work exceeded 40 per week."[13] Mr. Sleeper also asserts that he was never paid "for those hours that he worked that exceeded 40 hours a week, or exceeded 8 hours a day, even though Mr. Sleeper worked overtime hours pursuing the clear expectations of his employer."[14] Mr. Sleeper also asserts that URS "illegally withheld, and deducted, compensation he had earned as part of his commission pay . . . ."[15] Based on these allegations, Mr. Sleeper brings claims against URS for violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the Alaska Wage and Hour Act, AS 23.10.050, *et seq.* ("AWHA").

On February 19, 2018, URS filed the instant Motion for Summary Judgment.[16]

## LEGAL STANDARD

### I. Jurisdiction and Applicable Law

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this is a civil action with certain claims arising under federal law, 29 U.S.C. § 201, *et seq*. The Court has supplemental jurisdiction over Plaintiff's related state law claims.[17] The Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action

---

[13] Docket 1-1 at 2, ¶ 2.6.

[14] Docket 1-1 at 2, ¶ 2.7. Mr. Sleeper alleges that he worked "over 1,400 hours, for which URS Midwest, Inc., deliberately refused to pay him overtime." Docket 1-1 at 6, ¶ 3.14.

[15] Docket 1-1 at 5, ¶ 3.13.

[16] Docket 35 (Motion).

[17] *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

between citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.[18]

The Court applies federal procedural law; Alaska substantive law applies to the state law claims.[19] Whether federal law preempts state law claims is a question of federal law.[20]

## II. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(a) directs a court to grant summary judgment if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." When considering a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his [or her] favor."[21] To reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[22] If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[23]

## DISCUSSION

The FLSA requires employers to pay overtime wages to employees who work

---

[18] Docket 1 at 3–4.

[19] *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

[20] *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 214 (1985).

[21] *Moldex-Metric, Inc. v. McKeon Prods., Inc.*, 891 F.3d 878, 881 (9th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

[22] *Anderson*, 477 U.S. at 248.

[23] *Id.* at 249–50 (citations omitted).

more than 40 hours per week.[24] Pursuant to the Motor Carrier Act ("MCA") exemption under the FLSA, this requirement does not apply to employees who drive a motor vehicle "in interstate or foreign commerce."[25]

The AWHA, like the FLSA, requires employers to pay overtime wages. AS 23.10.060 provides:

> An employer who employs employees engaged in commerce or other business, or in the production of goods or materials in the state, may not employ an employee for a workweek longer than 40 hours or for more than eight hours a day. . . . If an employer finds it necessary to employ an employee for hours in excess of the[se] limits . . . overtime compensation for the overtime at the rate of one and one-half times the regular rate of pay shall be paid.[26]

AS 23.10.060(d) exempts several categories of employees from the overtime requirement, including:

> [A]n individual employed as a line haul truck driver for a trip that exceeds 100 road miles one way if the compensation system under which the truck driver is paid includes overtime pay for work in excess of 40 hours a week or for more than eight hours a day and the compensation system requires a rate of pay comparable to the rate of pay required by this section.[27]

Mr. Sleeper contends that URS did not fulfill its requirements under the FLSA and AWHA and that he is entitled to damages as a result.[28] In response, URS makes a

---

[24] 29 U.S.C. § 207(a)(1).

[25] 29 U.S.C. § 213(b)(1); 49 U.S.C. § 31502; 29 C.F.R. § 782.2(b)(2).

[26] AS 23.10.060(a)–(b).

[27] AS 23.10.060(d)(15).

[28] 29 U.S.C. § 216(b) provides that employees may bring actions against employers for violations of 29 U.S.C. § 207. AS 23.10.110 provides that employees may bring actions against employers for violations of AS 23.10.060.

The parties' briefs discuss whether URS complied with 8 AAC 15.101 and 8 AAC 15.905, regulations promulgated pursuant to the AWHA. *See* Docket 36 at 27–32; Docket 40 at 14–16, 18–19; Docket 44 at 14. Mr. Sleeper's Complaint, however, alleges only violations of the FLSA

number of assertions to support its motion for summary judgment. Each is discussed in turn below.

### 1. Motor Carrier Act Exemption

URS asserts that Mr. Sleeper was exempt from FLSA overtime wage requirements, pursuant to the MCA exemption. The FLSA exempts "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49."[29] Section 31502(b) permits the Secretary to establish:

> (1) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier;[30] and

---

and AWHA. Docket 1-1 at 3–6. Whether an employee can maintain an action against his employer for violating these regulations is therefore not before the Court.

Mr. Sleeper's Complaint states that URS "maintained poor records concerning the wage owed to plaintiff." Docket 1-1 at 5, ¶ 3.13. URS's memorandum in support of its motion does not challenge this contention. While AS 23.10.100 establishes recordkeeping requirements for employers, no statute appears to authorize employees to bring actions against employers for violations of the statutory recordkeeping requirement. When an employer fails to keep adequate records, however, "an employee may prove her claim [that she was not properly compensated] if she presents sufficient evidence from which the court may draw a 'just and reasonable inference.' If the employee meets this minimum threshold, the burden shifts to the employer to 'come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.'" *Geneva Woods Pharmacy, Inc. v. Thygeson*, 181 P.3d 1106, 1109 (Alaska 2008) (quoting *Barios v. Brooks Range Supply, Inc.*, 26 P.3d 1082, 1086 (Alaska 2001) (quoting *Anderson*, 328 U.S. at 687-88)).

[29] 29 U.S.C. § 213(b)(1). *See Vidinliev v. Carey Int'l, Inc.,* 581 F. Supp. 2d 1281, 1284 n.2 (N.D. Ga. 2008) ("The [FLSA's] motor carrier exemption is not part of the Motor Carrier Act. The Motor Carrier Act is only relevant because the scope of the motor carrier exemption is defined by the jurisdiction that the Secretary of Transportation can assert under the Motor Carrier Act.").

[30] A motor carrier is "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). The term motor vehicle "means a vehicle, machine, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway in transportation, or a combination determined by the Secretary, but does not include a vehicle, locomotive, or car operated only on a rail, or a trolley bus operated by electric power from a fixed overhead wire, and providing local passenger transportation similar to street-railway service." 49 U.S.C. §

> (2) qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier,[31] when needed to promote safety of operation.

The Secretary of Transportation's power "extends to those classes of employees and those only who: (1) Are employed by carriers whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under section 204 of the Motor Carrier Act . . . and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce with the meaning of the Motor Carrier Act."[32]

URS asserts that Mr. Sleeper was exempt from the FLSA overtime wage provision under the MCA exemption pursuant to 29 C.F.R. § 782.3 because he drove a motor vehicle in interstate or foreign commerce.[33] Mr. Sleeper maintains that the MCA

---

13102(16).

[31] A motor private carrier is "a person, other than a motor carrier, transporting property by motor vehicle when--

> (A) the transportation is as provided in section 13501 of this title;
> (B) the person is the owner, lessee, or bailee of the property being transported; and
> (C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise."

49 U.S.C. § 13102(15).

[32] 29 C.F.R. § 782.2(a). *See* 29 C.F.R. § 782.2(b)(2) ("The exemption is applicable, under decisions of the U.S. Supreme Court, to those employees and those only whose work involves engagement in activities consisting wholly or in part of a class of work which is defined: (i) As that of a driver, driver's helper, loader, or mechanic, and (ii) as directly affecting the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce within the meaning of the Motor Carrier Act.").

[33] Docket 36 at 19-22; *see* 29 C.F.R. § 782.3(a) ("A 'driver,' as defined for Motor Carrier Act jurisdiction . . . is an individual who drives a motor vehicle in transportation which is, within the meaning of the Motor Carrier Act, in interstate or foreign commerce.").

exemption does not apply to him because he "never traveled outside of Alaska" for URS during the timeframe at issue.[34]

A truck driver may engage in interstate commerce so as to fall under the MCA even if he does not travel out of state. "Transportation within a single State is in interstate commerce within the meaning of the Fair Labor Standards Act where it forms a part of a 'practical continuity of movement' across State lines from the point of origin to the point of destination."[35]

Mr. Sleeper's circumstances mirror those of the plaintiff in *Klitzke v. Steiner Corp.*, a salesman who "contend[ed] that because his route [was] entirely within the state of Oregon, his hours of work [were] not subject to regulation by the Secretary."[36] There, the plaintiff delivered products that had been shipped to his company's Oregon warehouse from out of state vendors. As the Ninth Circuit explained, the plaintiff's "route is entirely within Oregon, but over half of his deliveries are items received from out of state."[37] The Circuit held that the goods from out of state that the plaintiff delivered entirely intrastate were in "continuous transportation" until delivered to customers. Therefore, the plaintiff's intrastate deliveries constituted engaging in interstate commerce.[38] Similarly, the vehicles Mr. Sleeper delivered within Alaska had originated from out of state. As Mr. Sleeper explained during his deposition:

---

[34] Docket 40 at 20.

[35] 29 C.F.R. § 782.7(b)(1) (citations omitted).

[36] 110 F.3d 1465, 1469 (9th Cir. 1997).

[37] *Klitzke*, 110 F.3d at 1467.

[38] *Id.* at 1470.

> **Counsel for URS:** "[W]here would you typically start your routes for United Road?"
> **Mr. Sleeper:** "At—at our yard."
> **Counsel:** "At the yards in Anchorage?"
> **Mr. Sleeper:** "At our yard in Anchorage, yes, because most of the vehicles that I hauled had special outfitting requirements. So they were shipped up here . . . to our yard in Anchorage, and that's where I would load them."
> **Counsel:** I see. So to be clear, the automobiles you were transporting would first come from a ship into Anchorage, correct?
> **Mr. Sleeper:** Right.
> **Counsel:** Do you know where those ships were originating from?
> **Mr. Sleeper:** Well, Tacoma, I think.
> **Counsel:** Washington?
> **Mr. Sleeper:** Seattle-Tacoma, Washington, yeah.[39]

Based on the foregoing, it is clear that Mr. Sleeper's deliveries were part of the "continuous transportation" of vehicles that originated in other states, such that the MCA exemption applies. Viewing the evidence in the light most favorable to Mr. Sleeper, he has not shown there are disputed material facts on this issue and URS is entitled to judgment as a matter of law as to the FLSA overtime wage claim.[40]

To the extent that Mr. Sleeper relies on the FLSA for his claim that URS unlawfully withheld or deducted wages by not paying him the Quality Fund bonus, this claim fails. While the FLSA guarantees employees a minimum wage and overtime pay, Mr. Sleeper's contentions regarding illegal withholdings and deductions are based on an agreed-upon bonus system and are unrelated to the FLSA's requirements.[41]

---

[39] Docket 38-1 at 18. Mr. Sleeper also testified at his deposition that the vehicles would commonly travel to Tacoma from another location before being shipped to Anchorage. Docket 38-1 at 19.

[40] URS alternatively argues that Mr. Sleeper falls within the MCA exemption because he could have reasonably expected to perform interstate driving during his relevant term of employment. Docket 36 at 19–20. Because the Court finds that Mr. Sleeper's intrastate deliveries of the vehicles constituted engaging in interstate commerce, the Court does not reach this argument.

[41] *See* Docket 38-1 at 20.

At oral argument, counsel for Mr. Sleeper argued that URS had violated the FLSA by failing to pay him the minimum wage forسطsleeper berth hours.  Counsel relied on *Ridgeway v. Wal-Mart Stores, Inc.*, which held that under California law, employers must pay truck drivers at least the minimum hourly wage during mandatory layover periods.[42] Mr. Sleeper's Complaint does not assert that URS violated the FLSA by failing to pay minimum wage, and the parties did not brief this issue.[43]  Furthermore, during his deposition Mr. Sleeper affirmed that he was "not claiming . . . [to be] owed compensation for time in the sleeper berth."[44]  At oral argument, the Court advised Mr. Sleeper that he could file a motion seeking to amend his complaint; he has not done so.  Accordingly, the Court declines to further address this argument.[45]

For the foregoing reasons, summary judgment is granted to URS on Mr. Sleeper's claims under the FLSA.

### 2. Preemption of AWHA Claim[46]

URS asserts that Mr. Sleeper's AWHA claim also fails because it is preempted by

---

[42] 107 F. Supp. 3d 1044, 1053 (N.D. Cal. 2015).

[43] *See* Docket 1-1 at 3–5.

[44] Docket 38-1 at 16.

[45] *See Artifex Software, Inc. v. Hancom, Inc.*, No. 16-CV-06982-JSC, 2017 WL 4005508, at *6 n.8 (N.D. Cal. Sept. 12, 2017) (declining to address "new argument improperly raised for the first time at oral argument" on a motion for summary judgment); *Flintlock Const. Serv., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1228 (11th Cir. 2013) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)(2)." (citation omitted)).

[46] If federal question jurisdiction were the sole basis of URS's removal to this Court, the Court would likely remand the remaining state law claims to the state court. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction."). However, URS also asserted diversity jurisdiction under 28 U.S.C. § 1332.  Docket 1 at 3–4.

Case No. 3:17-cv-00071-SLG,  *Sleeper v. URS Midwest, Inc.*
Order Re Motion for Summary Judgment
Page 10 of 20

federal law.[47] As the United States Supreme Court has explained,

> A fundamental principle of the Constitution is that Congress has the power to preempt state law. Even without an express provision for preemption, we have found that state law must yield to a congressional Act in at least two circumstances. When Congress intends federal law to "occupy the field," state law in that area is preempted. And even if Congress has not occupied the field, state law is naturally preempted to the extent of any conflict with a federal statute. We will find preemption where it is impossible for a private party to comply with both state and federal law . . . and where under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects . . . .[48]

URS contends that the Court should find Mr. Sleeper's AWHA claim is conflict preempted because "[c]ompliance with the AWHA as it concerns line haul truck drivers subject to the authority of the Secretary of Transportation completely undermines the loosening of overtime and recordkeeping requirements provided by the MCA exemption to the FLSA."[49]

---

Therefore, the Court retains jurisdiction over the state law claims.

[47] Docket 36 at 23–25.

[48] *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73 (2000) (internal citations, quotations, and alterations omitted).

[49] Docket 36 at 25. Because URS asserts that sections of the AWHA are preempted by federal law, the Court recently certified to the Attorney General of Alaska that a party has challenged the constitutionality of the AWHA. Docket 54; s*ee* 28 U.S.C. § 2403(b) ("In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality."); Fed. R. Civ. P. 5.1 (implementing 28 U.S.C. § 2403); *see, e.g., Douglas v. ReconTrust Co., N.A.*, 2012 WL 5470360 (W.D. Wash. Nov. 9, 2012) (concluding that a preemption argument draws into question the constitutionality of a state statute). While the Attorney General may intervene within 60 days after the Court certified the challenge, the Court may reject a constitutional challenge before the time to intervene expires, which is the Court's determination here. Fed. R.

Mr. Sleeper counters that federal law does not preempt the AWHA.[50] In support of this assertion, he cites several decisions in which the FLSA was held not to preempt state law.[51] He also cites *Agsalud v. Pony Express Courier Corp. of America*, a case that directly addresses the MCA.[52] In *Agsalud*, the Ninth Circuit rejected an employer's argument "that the Motor Carrier Act preempts Hawaii Revised Stat. § 387-3(a) requiring employers to pay time-and-one-half of work in excess of 40 hours per week."[53] In lieu of its own analysis, the Circuit held that "[t]hree circuits have considered this contention and have rejected it. . . . We agree for the reasons adequately stated in these opinions."[54] In

---

Civ. P. 5.1(c).

[50] Docket 40 at 10–13.

[51] *See Williams v. Gen. Dynamics Corp*, 208 F.3d 1144 (9th Cir. 2000); *Pac. Merch. Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1412 (9th Cir. 1990); *Webster v. Bechtel, Inc.*, 621 P.2d 890 (Alaska 1980).

Mr. Sleeper also cites *Bruns v. Municipality of Anchorage*, 182 F.3d 924, No. 97–36060, 1999 WL 288910, at *2 (9th Cir. 1999). However, because *Bruns* is an unpublished decision issued before January 1, 2007, it is not precedential and is not considered by this Court. 9th Cir. R. 36-3(a), (c).

[52] 833 F.2d 809 (9th Cir. 1987).

[53] *Id.* at 810.

[54] *Id.* (citing *Pettis Moving Co. v. Roberts,* 784 F.2d 439 (2nd Cir.1986); *Central Delivery Serv. v. Burch,* 486 F.2d 1399 (4th Cir. 1973), *mem. aff'g* 355 F. Supp. 954 (D. Md.); *Williams v. W.M.A. Transit Co.,* 472 F.2d 1258 (D.C. Cir. 1972)). In *Pettis Moving Co.*, a New York motor carrier argued that New York could not apply its overtime pay laws to employees that had been exempted from coverage under the FLSA's overtime provisions. 784 F.2d at 440. The Second Circuit first emphasized that "[t]raditional powers of the states . . . are not superseded by federal acts unless that was the clear and manifest purpose of Congress." *Id.* at 441. It then noted that the exemption applied to employees who were "subject to . . . [federal] maximum hour regulations," and that the power to regulate maximum hours for such employees is "directed at highway safety, not economic or wage regulation." *Id.* Accordingly, it concluded that a state law mandating overtime pay "does not interfere with such regulation." *Id.* Lastly, it noted that the FLSA contains a clause that "explicitly permits states to set more stringent overtime provisions than the FLSA." *Id.*; *see* 29 U.S.C. § 218(a). In *Central Delivery Service*, the Fourth Circuit affirmed a Maryland district court's holding that the MCA exemption did not preempt Maryland's overtime pay law. 486 F.2d at 1399. That court held that "[t]he fact that Congress has chosen

its Reply, URS states that "the AWHA's overtime requirements, as applied to a driver covered by the MCA exemption, inevitably conflict with federal law by reinstating the very 40-hour workweek standard, and further imposing an eight-hour workday standard, that the MCA exemption was intended to remove."[55] But this argument is clearly precluded by *Agsalud*, controlling Ninth Circuit precedent that this Court must follow.

URS contends that in *Agsalud*, the Ninth Circuit "did not consider the question of whether applying an overtime premium system to employees subject to MCA hours-of-service rules would frustrate the purpose of the MCA and related FLSA exemption through mandating duplicative recordkeeping."[56] But given that the Circuit Court relied on the rulings of other Circuits regarding other state overtime statutes, the Court reads *Agsalud* broadly to hold that state overtime statutes are not preempted by the MCA. This

---

to exclude from the overtime provisions of the [FLSA] employees with respect to whom the Secretary [of Transportation] has power to establish qualifications and maximum hours of service under the [MCA] does not mean that a provision for overtime pay for work over 40 hours, but within the maxima established by the Regulations, is inconsistent with the safety program." 355 F. Supp. at 959. In *Williams*, the D.C. Circuit held that the District of Columbia Minimum Wage Act was not limited by an explicit FLSA exemption. 472 F.2d at 1264. The *Williams* court's reasoning was similar to that of the Second and Fourth Circuits; it cited the FLSA's savings clause, and it concluded that "there is no necessary inconsistency between a [federal] regulation limiting maximum hours for safety reasons, and a state statute, passed as an economic regulation, for overtime pay within those limitations." *Id.* at 1261, 1264.

The Ninth Circuit in *Agsalud* stated that the defendant there "offer[ed] only one new contention, arguing the federal and state statutes conflict because the 'practical effect' of the Hawaii overtime pay law is to set the maximum number of hours at 40 per week, whereas Department of Transportation regulations generally provide for a maximum workweek of 60 hours." *Agsalud*, 833 F.2d at 810. The Circuit Court rejected that argument.

[55] Docket 44 at 10; *see Cent. Delivery Serv. v. Burch*, 355 F. Supp. 954, 959 (D. Md.), aff'd, 486 F. 2d 1399 (4th Cir. 1973) ("If Congress had intended that the overtime Regulations adopted under the Motor Carrier Act should be exclusive not only of any right to overtime under the Federal Fair Labor Standards Act, but also of any right to overtime under a private agreement or a State Wage and Hour Act, Congress could easily have so provided.").

[56] Docket 44 at 9 n.13.

Court will not create an exception to a Ninth Circuit holding simply because the decision articulating that holding did not address a relevant policy consideration.

*Agsalud* does not directly address whether a state's recordkeeping requirements are preempted.[57] Yet the reasoning in the cases relied upon in *Agsalud* would foreclose that argument. *Pettis Moving Co.* and the *Central Delivery Service* district court each noted that the purpose of regulations promulgated pursuant to the MCA is to promote highway safety.[58] A state statute imposing certain recordkeeping requirements on employers is not "inconsistent with the safety program" the MCA aims to advance.[59] Accordingly, the AWHA's recordkeeping requirement "does not interfere with" the purpose of the MCA or the MCA exemption and is not preempted.[60]

Lastly, URS argues that the *Agsalud* court "did not consider the question of whether applying an overtime premium system to employees subject to MCA hours-of-service rules would . . . incentiviz[e] dangerously long hours for interstate drivers to earn overtime."[61] As explained above, this Court cannot reject Ninth Circuit precedent on this basis. Furthermore, the out of Circuit opinions relied upon in *Agsalud* concluded that there "is no necessary inconsistency between a[] . . . regulation limiting maximum hours for safety reasons, and a state statute, passed as an economic regulation, for overtime

---

[57] URS points to the MCA's silence with regard to recordkeeping as evidence that the MCA was intended to loosen recordkeeping requirements. *See* Docket 36 at 25.

[58] *See Pettis Moving Co.*, 784 F.2d at 441; *Cent. Delivery Serv.*, 355 F. Supp. at 959.

[59] *Cent. Delivery Serv.*, 355 F. Supp. at 959.

[60] *Pettis Moving Co.*, 784 F.2d at 441.

[61] Docket 44 at 9 n.13.

pay within those limitations."⁶² Any argument that Alaska's overtime scheme conflicts with MCA safety goals is particularly unconvincing in light of the fact that truck drivers who receive overtime pay under the AWHA are also subject to the maximum hour regulations promulgated pursuant to the MCA. Given that Alaska's requirements do not directly conflict with any provisions of the MCA or the FLSA, URS has not shown that the AWHA provisions at issue constitute an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress."⁶³ Accordingly, URS has not shown that the AWHA is preempted by federal law.⁶⁴

### 3. AWHA Requirements

URS asserts that "even if [Mr. Sleeper's] AWHA overtime claim is not preempted,

---

⁶² *Williams*, 472 F.2d at 1264 (citing *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 661 (1947); *see Pettis Moving Co.*, 784 F.2d at 441; *Cent. Delivery Serv.*, 355 F. Supp. at 959. The *Central Delivery Service* decision "point[ed] out that Department of Transportation regulations do not even preempt state *safety* regulations that do not interfere with federal regulations," a conclusion the *Pettis Moving Co.* decision cited approvingly. *Pettis Moving Co.*, 784 F.2d at 441 n.6 (citing *Cent. Delivery Serv.*, 355 F. Supp. at 959).

⁶³ Even if the AWHA provisions were interpreted as pertaining to worker safety, federal regulations indicate that the MCA sets a floor, rather than a ceiling, with regard to regulation of this field. *See* 49 C.F.R. § 390.9 ("Except as otherwise specifically indicated, subchapter B of this chapter is not intended to preclude States or subdivisions thereof from establishing or enforcing State or local laws relating to safety, the compliance with which would not prevent full compliance with these regulations by the person subject thereto.").

⁶⁴ URS likens the situation here to that in *Fuller v. Golden Age Fisheries*, 14 F.3d 1405 (9th Cir. 1994). Docket 44 at 9. However, that case involved maritime employees and its holding was in part dependent on the "minimal" contact that those employees had with the state of Alaska. *Fuller*, 14 F.3d at 1409 ("[P]laintiffs here were engaged in coastwise voyages and their predominant job situs was the high seas rather than the territorial waters of Alaska."). Indeed, the *Fuller* plaintiffs were not Alaska residents. *Id.* Because the instant case involves an employee whose work occurred almost entirely within state boundaries, and because Mr. Sleeper was an Alaska resident while working for URS, *Fuller* is inapposite.

The Court may reject URS's preemption argument before the time the Attorney General of Alaska has to intervene has expired. Fed. R. Civ. P. 5.1(c); *see supra* note 49.

. . . URS paid [Mr. Sleeper] in accordance with the AWHA pursuant to an agreed upon commissions and bonus system."[65]  Under Alaska law, if an employee works in excess of 40 hours per week or eight hours per day, "overtime compensation for the overtime at the rate of one and one-half times the regular rate of pay shall be paid."[66]  Employers of long haul truck drivers are permitted to establish an alternate compensation system.[67]  The alternate system, however, must "include[] overtime pay for work in excess of 40 hours a week or for more than eight hours a day" and must "require[] a rate of pay comparable to the rate of pay" for employees not covered by the exception.[68]

URS contends that Mr. Sleeper "was paid in accordance with the AWHA" because its "commissions and bonus system considered all of [Mr. Sleeper's] work hours" and Mr. Sleeper's pay "far exceeded what [he] would have earned had URS elected to pay minimum wage and 1.5x the minimum wage for daily and weekly overtime hours."[69]  But the current record does not establish that Mr. Sleeper was paid in accordance with the AWHA.  During his relevant time at URS, Mr. Sleeper was paid a commission of 23 or 24% of net revenue for each trip.  He was also eligible for a 3% Quality Fund bonus.[70]  It is possible that URS complied with the statutory requirements when calculating this rate.[71]

---

[65] Docket 36 at 26.

[66] AS 23.10.060(b); *see* AS 23.10.060(a).

[67] AS 23.10.060(d)(15).

[68] AS 23.10.060(d)(15).

[69] Docket 36 at 26–27.

[70] Docket 41 at 2, ¶¶ 5–6; Docket 38-1 at 20–21.  URS asserts that this resulted in Mr. Sleeper's earning between approximately $73,000 and $102,000 per year.  Docket 37 at 6, ¶ 29.

[71] *Cf. Schorr v. Frontier Transp. Co.*, 942 P.2d 418, 422 n.9 (Alaska 1997) (describing a method

But while the record contains some information about the factors URS took into account,[72] it is silent as to whether the rate "includes overtime pay for work in excess of 40 hours a week or for more than eight hours a day" at a rate "comparable" to the rate in AS 23.10.060(b). Therefore, viewing the evidence in the light most favorable to Mr. Sleeper, URS has not shown that there are no genuine disputes of material fact as to whether it fulfilled the AWHA's alternate compensation system requirements.

The Court finds, however, that summary judgment to URS is warranted with regard to Mr. Sleeper's AWHA claim that URS "illegally withheld, and deducted, compensation he had earned as part of his commission pay."[73] First, there are no genuine disputes of material fact concerning this issue. Mr. Sleeper contends that "URS deducted payments from his guaranteed Quality Fund payment," and that the deductions "were for damage and breakage costs that URS suffered."[74] URS does not dispute these assertions; rather, it acknowledges that the Quality Fund balance "would be reduced to account for damage to vehicles being transported," regardless of whether the driver was at fault.[75] Mr. Sleeper also contends that URS unlawfully deducted from his wages, and he notes that URS "alleges that it never made unlawful deductions."[76] Whether the deductions were "lawful," however, does not present a dispute of material fact.

---

of calculating an alternate rate of pay pursuant to AS 23.10.060(d)(15) that the parties agreed complied with the statute).

[72] *See, e.g.,* Docket 37 at 6–7, ¶ 30.

[73] Docket 1-1 at 5, ¶ 3.13.

[74] Docket 40 at 19.

[75] Docket 37 at 7, ¶¶ 33–34.

[76] Docket 1-1 at 4, ¶ 3.4; Docket 40 at 19.

Second, viewing the evidence in the light most favorable to Mr. Sleeper, the AWHA does not support Mr. Sleeper's claim. Mr. Sleeper does not cite to any portion of the AWHA that prohibits employers from making deductions from an employee's wages. However, 8 AAC 15.160, which was promulgated pursuant to the AWHA, does prohibit employers from "requir[ing] an employee to reimburse the employer for . . . lost, missing, or stolen property, unless the employee admits willingly and in writing, to having personally taken the specific property alleged to be lost, missing, or stolen; or . . . damage or breakage costs unless clearly due to willful conduct of the employee."[77] The regulation also prohibits employers from "[r]equiring or inducing an employee to return or give up any part of the compensation [to which] the employee is entitled."[78] However, as noted above, Mr. Sleeper's Complaint alleges only statutory violations.[79]

Even if the Court were to conclude that the question whether URS has complied with 8 AAC 15.160 is properly before it, URS would be entitled to summary judgment on this issue. Mr. Sleeper acknowledges his regular commission was never reduced for vehicle damage.[80] In *Dias v. Silver Bay Logging, Inc.*, the Alaska Supreme Court concluded that "[t]he concept of entitlement must refer to an employee's contractual or statutory and regulatory rights."[81] It thus held that an employment contract may include a lodging and board deduction, because that deduction did not require the employee to

---

[77] 8 AAC 15.160(a)(4)–(5).

[78] 8 AAC 15.160(a).

[79] *See supra* note 28.

[80] Docket 38-1 at 32.

[81] 55 P.3d 732, 736 (Alaska 2002).

"give up . . . the compensation to which he is entitled."[82] Here, Mr. Sleeper asserts in his affidavit that "[a]t no time during the period that these deductions occurred did I sign any written document stating that I intentionally caused damages to the cargo I transported or to the vehicle I drove. Nonetheless, URS took deductions from my paychecks based on the claim that damage occurred to the vehicle I drove or the cargo I transported."[83] But Mr. Sleeper was not entitled to a Quality Bonus fund payment unless the vehicles he transported were not damaged for any reason. As such, when he did not receive the Qualify Bonus fund payment, he did not give up compensation to which he was otherwise entitled.[84] Accordingly, URS is entitled to judgment as a matter of law on the state law Quality Fund claim.[85]

## CONCLUSION

In light of the foregoing, Defendant's Motion for Summary Judgment at Docket 35 is GRANTED as to Mr. Sleeper's FLSA claim and as to his AWHA claim as it relates to the Quality Fund bonus; the motion is DENIED as it relates to the remaining aspects of Mr. Sleeper's AWHA claim.[86]

---

[82] *Id.*

[83] Docket 41 at 3, ¶ 8.

[84] Docket 38-1 at 31–32.

[85] URS also contends that it complied with other regulatory requirements promulgated pursuant to the AWHA. See Docket 36 at 27–32. In the alternative, URS contends that any failure on its part to comply with regulatory requirements should be disregarded by the Court because the regulations' requirements are not "consistent with and reasonably necessary to carry[ing] out the purposes" of the AWHA. Docket 44 at 12. Because Mr. Sleeper's Complaint alleges only statutory violations, the Court declines to address these arguments. *See supra* note 28.

[86] The granting of summary judgment to URS with regard to the FLSA claim means that the AWHA's two-year statute of limitations applies. *See* AS 23.10.130 ("An action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages under AS 23.10.050 - 23.10.150 is forever barred unless it is started within two years after the cause of action

IT IS FURTHER ORDERED that a Trial Setting Conference will be held on **October 12, 2018** at **9:30 AM** in Anchorage Courtroom 3 before Judge Sharon L. Gleason.

DATED this 28th day of September, 2018 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

accrues.").